UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JENNIFER E.,

                        Plaintiff,

v.                                                                3:19-CV-0321 (ATB)

COMM'R OF SOC. SEC.,

                        Defendant.

_____

APPEARANCES:                                OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.                 MICHAEL L. HENRY, ESQ.
Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Jennifer E. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 7).  The parties have filed briefs (Dkt. Nos. 9, 13, 16) addressing the administrative record of the proceedings before the Commissioner (Dkt. No. 8).[1]

# I.   RELEVANT BACKGROUND

## A.   Factual Background

Plaintiff was born in 1977, making her 38 years old as of the amended alleged onset date and 41 years old on the date of the ALJ's decision.  Plaintiff reported completing the twelfth grade and attending special education classes, as well as vocational training.  She had past relevant work as a data entry clerk, stock clerk, circuit board assembler, and vacuum assembler.  At the initial level, Plaintiff alleged disability due to posttraumatic stress disorder ("PTSD").

## B.   Procedural History[2]

Plaintiff applied for disability insurance benefits on November 18, 2015, alleging disability beginning on August 27, 2014.  She subsequently amended her alleged onset date to her protective filing date.  (T. 10, 34-35.)  Her application was initially denied on February 16, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Jo Ann L. Draper, on March 29, 2018, at which a vocational expert ("VE") also testified.  (T. 31-62.)  On May 25, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act.  (T. 7-

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2] The record also contains a prior unfavorable ALJ decision and Appeals Council denial of review, with the Honorable United States District Court Judge David N. Hurd of the Northern District of New York denying Plaintiff's previous federal appeal on March 23, 2017.  (T. 63-89, 103.)

25.)  On February 7, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

In her decision (T. 12-21), the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 18, 2015, the application date.  (T. 12.)  The ALJ determined that Plaintiff had severe impairments including degenerative disc disease at L5-S1, personality disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), panic disorder with agoraphobia, and depressive disorder.  (*Id*.)  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 13.)  Specifically, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders).  (*Id*.)  The ALJ found that Plaintiff had the RFC to perform light work except that she

> can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand or walk for 6 hours; sit for 6 hours; can perform tasks learned in 30 days or less involving simple work-related decisions requiring little to no judgment with only occasional work place changes; no interaction with the public; no more than occasional interaction with co-workers; no requirement to read instructions or write reports; no work at a production-rate pace, such as no fast-paced work as on an assembly line; and is unable to work in close proximity to others, further defined as not standing next to or not being involved in tasks being performed by others.

(T. 15.)  The ALJ found that Plaintiff had no past relevant work and determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, based on the testimony of the VE.  (T. 20-21.)  The ALJ therefore found that Plaintiff was not disabled.  (T. 21.)

3

**D.      Issues in Contention**

In her brief, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ erred in weighing the medical opinion evidence.  (Dkt. No. 9, at 10-18.)  Plaintiff also contends that the Step Five determination is not supported by substantial evidence.  (*Id*. at 8-10, 18-19.)

Defendant argues that substantial evidence supports the ALJ's mental RFC assessment and the finding that Plaintiff could do a significant number of jobs in the national economy. (Dkt. No. 13, at 12-27.)   Defendant maintains that, because Plaintiff did not object, at the administrative level, to the reliance of the VE and the ALJ, at Step Five, on data from the Bureau of Labor Statistics Occupational Employment Statistics ("OES"), any related arguments were forfeited on appeal.  (*Id.* at 3-4, 23-27).

In her reply, Plaintiff contends that her arguments regarding the ALJ's Step Five determination were preserved for appeal because there is no issue-exhaustion requirement, so that the failure to raise an argument before the Appeals Council does not preclude a claimant from raising it on appeal to federal court.  (Dkt. No. 16, at 1-3.)  The ALJ's mental RFC determination was primarily based on the non-examining opinion of consultant K. Lieber-Diaz, Psy.D., which Plaintiff maintains cannot provide substantial support for the RFC, and which does not provide a narrative description of the extent of Plaintiff's capacity or limitation.  (*Id*. at 3-6.)  Finally, Plaintiff argues that no other opinion evidence supports the ALJ's conclusions and that the ALJ substituted her opinion for undisputed medical opinions.  (*Id*. at 6.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906

F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only

if the correct legal standards were not applied, or it was not supported by substantial evidence.

*See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983,

986 (2d Cir. 1987).  "Substantial evidence" is evidence that amounts to "more than a mere

scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*,

402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  Where evidence is deemed susceptible to

more than one rational interpretation, the Commissioner's conclusion must be upheld.

*Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.    DISCUSSION

####    A.    The ALJ's Analysis of the Opinion Evidence and RFC Determination are Not Supported by Substantial Evidence

#####        1.   Applicable Law

######            a.  RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."   A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. § 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

7

### b. Consideration of Opinion Evidence

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 13-CV-1388 (GLS), 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence); *Little v. Colvin*, 14-CV-63 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019), the Second Circuit addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning limited weight to a treating physician's opinion.  The *Estrella* Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  925 F.3d at 96 (alteration in original).  The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

The Court in *Estrella*, found that the ALJ's reliance on the opinion of a one-time consultative psychologist and "two cherry-picked treatment notes," while ignoring other treatment notes reflecting a more serious impairment, did "not provide good reasons for assigning little weight to [the treating psychiatrist's] opinion."  925 F.3d at 96-98 (the Second Circuit's frequent caution that ALJs should not rely heavily on the findings of consultative physicians after a single examination "is even more pronounced in the context of mental illness

where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health" or fluctuating symptoms).  The *Estrella* case was ultimately remanded in light of the ALJ's assigning "little weight" to the opinion of Estrella's treating psychiatrist without explicitly considering  the "the frequency, length, nature, and extent of treatment," and given the lack of "other good reasons" to support the ALJ's decision."  *Id*. at 98.

More recently, the Second Circuit applied the analysis of *Estrella* in *Ferraro v. Saul*, 18-3684, ___ F. App'x ___, 2020 WL 1189399, at *2-3 (2d Cir. Mar. 12, 2020).  A searching review of the record did not assure the *Ferraro* Court that the substance of the treating physician rule was not traversed because the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians and did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians.  *Id*.  The Court in *Ferraro* found that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"  *Id*. at *2.  The Court also cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination,'" particularly in the context of mental illness.  *Id*. at *3 (quoting *Estrella*, 925 F.3d at 98).

### 2.  Relevant Evidence

#### a.  Treating Opinions

In February 2018, Plaintiff's primary care physician, Ian Stuppel, D.O., diagnosed impairments, including anxiety and depression, with chronic episodes.  He concluded that Plaintiff would be unable to participate in any stressful environments and would likely not perform well in a work environment, after experiencing multiple relapses in the past.  (T. 363.) Dr. Stuppel opined that Plaintiff had, since 2013, marked limitations in maintaining attention

10

and concentration, maintaining regular attendance without interruptions from psychologically based symptoms, performing activities within a schedule, being punctual, performing at a consistent pace, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers, and responding appropriately to ordinary stressors in a work setting with simple tasks.  (T. 362.) Dr. Stuppel also concluded that Plaintiff would be off-task more than 33 percent of the day and absent three or more days per month.  (T. 363.)

The ALJ afforded very little weight to Dr. Stuppel's opinion because it was not supported by his own mental status examinations, which generally revealed Plaintiff to be oriented, in no acute distress, and with normal mood and affect.  (T. 18-19, 291, 295, 304, 316, 350, 352, 359, 360.)  The ALJ also noted that Dr. Stuppel's opinion was "in the form of a check box type form with little or no narrative to support.  Such forms are not as persuasive as an in-depth written analysis which discusses the basis behind the opinion."  (T. 19.)  The ALJ also found that Dr. Stuppel's opinion was inconsistent with the opinion of non-examining medical expert, Dr. Lieber-Diaz (discussed below), and the medical evidence of record, which failed to "document significant, ongoing mental status abnormalities on examination."  (T. 19, 291, 295, 304, 316.)

In a letter dated October 20, 2015, Plaintiff's counselor, Theresa Dearie, LCSW-R, stated that she had been seeing Plaintiff for several months for therapy and that Plaintiff was being treated for severe anxiety, depression and panic attacks.  (T. 318.)  LCSW Dearie noted that Plaintiff was often not able to leave her home due to these panic attacks, relied on her family to obtain basic needs, and was taking medications for these extreme conditions.  (*Id.*) On January 3, 2016, LCSW Dearie opined that Plaintiff was limited in adaptation.  (T. 323.)

11

In an October 2016 opinion, LCSW Dearie noted that Plaintiff's PTSD and anxiety[3] were being treated with weekly counseling to help alleviate symptoms.  (T. 345.)  She opined that Plaintiff was very limited in understanding, carrying out and remembering instructions, maintaining attention/concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, maintaining basic standards of personal hygiene and grooming, and functioning in a work setting at a consistent pace.  (T. 346.)  LCSW Dearie cited Plaintiff's severe PTSD symptoms due to past abuse and an abduction incident, as well as severe anxiety and panic attacks.  (*Id.*)

In January 2017, LCSW Dearie again noted Plaintiff's PTSD, anxiety, and depression, and opined that she was very limited in understanding, carrying out and remembering instructions, maintaining attention/concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, maintaining basic standards of personal hygiene and grooming, and functioning in a work setting at a consistent pace.  (T. 348-49.)  LCSW Dearie concluded that Plaintiff was not able to perform work due to extreme anxiety, stress and depression with many things triggering flashbacks.  (T. 349.)

Finally, in March 2018, LCSW Dearie opined that, since March 2015, Plaintiff had extreme limitations in maintaining attention and concentration, maintaining regular attendance without interruptions from psychologically based symptoms, performing activities within a schedule, being punctual, performing at a consistent pace, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers, and responding appropriately to ordinary stressors

---

[3] LCSW Dearie also opined that plaintiff had physical limitations at that time.  (T. 346.)

in a work setting with simple tasks.  (T. 388, 389.)  She concluded that Plaintiff would be off-task more than 33 percent of the day and absent three or more days per month.  (T. 389.)

The ALJ afforded very little weight to the opinions of LCSW Dearie, [4] noting that she was not an acceptable medical source as a licensed counselor/social worker.  (T. 19, 318, 323, 345-46, 349, 388-89.)  The ALJ stated that LCSW Dearie's opinions were not supported by her own mental status examinations, which revealed Plaintiff to be alert and oriented, with appropriate dress, normal speech, no abnormal thought content, future-oriented thought content, intact insight and judgment, intact recent and remote memory, intact attention and concentration, intact language, and an average fund of knowledge.  (T. 19, 322, 367, 370, 380, 385-86.)  The ALJ concluded that LCSW Dearie's opinions were also inconsistent with Plaintiff's reports of improvement, for example, that she was going outside more often, going to stores with her mother, had less anxiety, was coping fairly well, and was doing better with anxiety.  (T. 19, 321, 370, 372-74, 381.)  The ALJ found that LCSW Dearie's opinion was inconsistent with the overall evidence of record, was inconsistent with Dr. Lieber-Diaz's opinion, and was also "in the form of a check box type form with little or no narrative to support."  (T. 19, 291, 295, 304, 316.)  The ALJ further noted that the ultimate issue of disability is one reserved to the Commissioner.  (T. 19.)

---

[4] It appears the ALJ included a January 2016 opinion from another social worker in her analysis of LCSW Dearie's opinions.  (T. 19, 320.)  The January 2016 opinion in Exhibit B2F appears to be from Alice O'Brien-Betts, who diagnosed plaintiff's impairments, including PTSD with a fair prognosis, panic disorder with agoraphobia, and the need to rule out dependent personality disorder.  (T. 320.)  Neither Plaintiff nor Defendant mention LCSW O'Brien-Betts' opinion in their briefs.  (Dkt. Nos. 9 and 13.)  The Court finds that any error by the ALJ in identifying the source of this opinion would be harmless because it is unlikely that it would have changed the ALJ's analysis, given that both Ms. Dearie and Ms. Betts were licensed clinical social workers.  (T. 318, 320.)

### b. Dr. Moore's Consultative Opinion

In January 2016, Plaintiff underwent a psychiatric consultative examination conducted by Mary Ann Moore, Psy.D. (T. 327-34.) Dr. Moore noted that Plaintiff was driven to the exam by her sister-in-law, and that she resided with her parents. Plaintiff completed high school and was in special education classes with an individualized education plan ("IEP"), based on a learning-disabled classification. (T. 328.) Plaintiff stated that she had last worked four years prior as a stocker for three days, and that she experienced anxiety from being around too many people. (*Id*.) She felt that she would not be able to work because of PTSD, panic disorder with agoraphobia, dependent personality disorder, anxiety disorder, learning issues, and medical issues. (*Id*.)

Plaintiff reported frequent difficulty sleeping, feelings of depression, crying spells, hopelessness, irritability, loss of energy, and diminished sense of pleasure. She had no friends other than her mother. Plaintiff reported past abuse as an adult. She experienced trust difficulties, intrusive thoughts, nightmares, a hyperstartle response, and hypervigilance. She needed her dog nearby when she slept, in order to feel safe. She suffered from excessive worries and restlessness, resulting in picking, and experienced panic attacks with palpitations, sweating, breathing difficulties, trembling and chest pain. (T. 329.) Plaintiff stated that she had gone for a month and a half without leaving the house because of her panic attacks, the most recent of which occurred two days prior when she heard loud noises outside and felt frightened. (*Id*.) She sometimes thought that she heard various noises, causing her to worry that someone might be watching her. (*Id*.) Plaintiff noted that her memory and concentration had always been poor, and that it had gotten worse lately. (*Id*.)

Plaintiff acknowledged that she could dress, bathe and groom herself, but would go for three days or so without doing so.  She could do cooking, cleaning, and laundry, but stated that she did not feel like doing it, and lacked the necessary energy.  Plaintiff reported that her parents generally shopped for her.  She could manage money.  Plaintiff had a license but had not driven in about three years, and would not take a bus because of all the people.  Of her friends and family, she really felt close only to her mother.  Plaintiff enjoyed reading and watching television.  (T. 331.)

Upon examination, Dr. Moore noted that Plaintiff had adequate social skills, manner of relating, demeanor, and responsiveness to questions.  Dr. Moore reported that Plaintiff had coherent and goal-directed thought processes, with no evidence of hallucinations, delusions or paranoia during the evaluation session.  (T. 330.)  Plaintiff presented with an anxious affect, nervous mood, and clear sensorium, and she was oriented to person, place and time.  (*Id*.)  She had impaired attention and concentration, possibly due to anxiety and learning issues, as well as impaired recent and remote memory skills.  (*Id*.)  Dr. Moore estimated that Plaintiff's intellectual functioning was below average to the borderline range, and opined that Plaintiff had fair insight and fair-to-poor judgment, with depression, anxiety and agoraphobia.  (T. 331.)

Dr. Moore diagnosed panic disorder with agoraphobia, PTSD, generalized anxiety disorder, dependent personality disorder, unspecified learning disorder, and the need to rule out borderline intellectual functioning.  (T. 332.)  Dr. Moore opined that Plaintiff had no limitation in following or understanding simple directions and instructions or performing simple tasks independently; she had moderate limitation in maintaining attention and concentration, learning new tasks, performing complex tasks independently, and appropriately dealing with stress; and she had marked limitation in relating to others, making appropriate work decisions,

and maintaining a regular schedule.  (T. 331.)  Dr. Moore concluded that the examination

results appeared to be consistent with psychiatric and learning issues that might significantly

interfere with Plaintiff's ability to function on a daily basis.  (T. 331.)

The ALJ stated that "great weight is given to Dr. Moore's opinion" to the extent that it

was reasonable to limit Plaintiff to simple work and dealing with stress, given her mental

health diagnoses and conservative treatment."  (T. 18.)  The ALJ noted, however, that she

afforded little weight to Dr. Moore's findings of marked limitations in relating to others,

making appropriate work decisions, and maintaining a regular schedule.  (*Id*.)  The ALJ

explained that this portion of the opinion was not supported by Dr. Moore's own mental status

examination findings, which were generally normal despite impaired attention, concentration,

and memory skills.  (T. 18, 330.)  The ALJ stated that, although Dr. Moore observed that

Plaintiff was anxious and nervous, "there otherwise was no documented severe abnormalities

relating to social functioning or her ability to maintain a regular work schedule."  Dr. Moore

found that Plaintiff demonstrated adequate demeanor, responsiveness to questions, manner of

relating, and social skills.  (T. 18, 330-31.)  The ALJ also noted that Dr. Moore's findings of

marked limitations were inconsistent with the overall evidence of record, which generally

revealed "normal mental status examinations and no evidence of frequent psychiatric

hospitalizations or inpatient treatment."  (T. 18, 291, 295, 304, 316, 351, 353, 355.)

### c.  Dr. Lieber-Diaz's Non-Examining Opinion

As part of the initial determination in early 2016, non-examining consultant Dr. Lieber-

Diaz opined that Plaintiff had mild restriction of activities of daily living; moderate difficulties

in maintaining social functioning and concentration, persistence or pace; and no repeated

episodes of decompensation of extended duration.  (T. 95-96.)  Dr. Lieber-Diaz opined that

Plaintiff was capable of simple work in a setting that had limited contact with the general public.  (T. 88-100.)

In determining Plaintiff's mental RFC, the ALJ afforded great weight to Dr. Lieber-Diaz's opinion, while acknowledging that he did not examine Plaintiff.  (T. 18.)  The ALJ emphasized that Dr. Lieber-Diaz was "a specialist familiar with the Social Security rules and regulations regarding disability, and that such opinions by program physicians are afforded the weight of expert medical opinions by non-examining physicians."  (*Id*.)  The ALJ noted that Dr. Lieber-Diaz "reviewed the claimant's records, provided a detailed explanation of his findings, and offered an opinion that is widely consistent with the overall record[.]"  (*Id*.)  The ALJ concluded that this opinion was consistent with the absence of evidence that Plaintiff had "ever been psychiatrically hospitalized, she receives outpatient treatment, and her activities of daily living[.]"  (T. 18, 100.)  The ALJ noted that she had nonetheless given Plaintiff the benefit of the doubt based on additional medical evidence and her testimony and further limited her to no contact with the public and only occasional contact with coworkers.  (T. 18.)

### 3.  Analysis

The ALJ stated that her RFC determination was supported by the findings and opinion of Dr. Lieber-Diaz, the opinion of Dr. Moore (in part), the objective medical evidence of record, Plaintiff's own reported activities of daily living, and the longitudinal record as a whole.  (T. 20.)  Plaintiff contends the ALJ erred in weighing the medical opinion evidence and failed to properly determine plaintiff's mental limitations.  (Dkt. No. 9, at 10-18; Dkt. No. 16, at 3-6.)  The Court agrees that the ALJ erred in weighing the medical opinion evidence and determining Plaintiff's mental limitations, and, therefore, orders a remand.

The Court finds that the ALJ's primary reliance on Dr. Lieber-Diaz's January 2016 non-examining opinion over those of providers who examined and treated Plaintiff was error, in light of the evidence of Plaintiff's severe mental impairments, including personality disorder, anxiety disorder, PTSD, panic disorder with agoraphobia, and depressive disorder. (T. 12, 18-20.)  As discussed above, *Estrella* and its progeny reflect the Second Circuit's judgment that the opinions of treating providers are entitled to even more deference when they relate to a Plaintiff with mental health limitations.  Contrary to *Estrella* and *Ferraro*, the ALJ did not adequately address the frequency, length, nature, and extent of the treatment relationship between Plaintiff and the primary care doctor who managed her mental health medications, Dr. Stuppel.  While Dr. Lieber-Diaz acknowledged the consultative examination findings by Dr. Moore in his narrative, he did not make any efforts to reconcile the findings of Dr. Moore that were inconsistent with Dr. Lieber-Diaz's assessment of Plaintiff's limitations, and he did not have the benefit of the opinions of Plaintiff's treating providers or many of their later treatment notes.  (T. 100.)

The Court acknowledges that LCSW Dearie, as a social worker, was not a medical source entitled to controlling weight, and that Dr. Stuppel was not a mental health specialist. However, their opinions, as treating providers, considered in conjunction with that of examining psychologist, Dr. Moore, cast grave doubt on the ALJ's decision to afford greater weight to Dr. Lieber-Diaz's non-examining opinion.  (T. 18-20.)  Given the lack of objective measures of many aspects of mental health, greater weight should generally be afforded treating providers who have multiple opportunities to observe and communicate with the Plaintiff, as opposed to the consulting physicians, who see the Plaintiff once, if at all.  *See, e.g., Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (doctors who have

not treated or examined a patient are generally entitled to less deference; "the treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs"). The ALJ inappropriately relied on a non-examining opinion, or his own lay judgment, to discount the limitations opined by three sources who examined and interacted with Plaintiff and could better assess the full extent of her mental health conditions and related limitations.

For example, Dr. Stuppel and LCSW Dearie both opined that Plaintiff would be off task more than 33 percent of the workday and absent more than three days per month due to mental health limitations. The VE testified, at the administrative hearing, that an individual who was off task for more that 10 to 15 percent of the workday could not maintain competitive employment. (T. 59). Dr. Moore found that Plaintiff had marked limitations for maintaining a regular schedule and moderate limitations for maintaining attention and concentration, which was largely consistent with the opinion of the treating providers. Dr. Lieber-Diaz's opinion does not overcome the treating providers on this point; he found that Plaintiff had "moderate" and "sustained" difficulties in maintaining attention, concentration, persistence and/or pace (T. 96, 100), and was moderately limited in the ability to complete a normal workday and workweek with interruptions from psychologically based symptoms (T. 99). *See, e.g., Rowling v. Colvin*, No. 16-CV-6577, 2018 WL 1151106, at *7-8 (W.D.N.Y. Mar. 5, 2018) (mental health assessments in the record that primarily showed a "moderate" limitation in the area of concentration did not support the ALJ's implicit finding that plaintiff would be off-task less than 20% of the time); *Bruner v. Colvin*, 16-CV-6735, 2017 WL 4215942, at *5 (W.D.N.Y. Sept. 22, 2017) (moderate limitation in ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms equals a finding that plaintiff

would be off task about 20% of work time, which would preclude ability to work).

In dismissing the opinions of the treating sources with respect to Plaintiff's inability to

stay on task to the extent necessary to perform any competitive employment, the ALJ

substituted his lay opinion for that of the treating providers, without adequate support from any

other medical opinion evidence. *See, e.g., Avers v. Berryhill*, No. 17-CV-0532SR, 2019 WL

2295398, at *3-4 (W.D.N.Y. May 30, 2019) (given the opinions of treating and examining

doctors that plaintiff would be off task more than 25% of a workday and would be moderately

limited in his ability to maintain attention and concentration, perform activities within a

schedule, and maintain regular attendance, there was no evidence in the record upon which the

ALJ could base his determination that plaintiff would be able to meet the attendance and

concentration standards of the positions identified by the vocational expert); *Bruner v. Colvin*,

2017 WL 4215942, at *3, 5 (based on treating physician's opinion that plaintiff would be off-

task 30% of the workweek, the examining consulting psychologist's statement that plaintiff

"has difficulty with a regular schedule, due to anxiety," and the non-examining psychologist's

statement that plaintiff is moderately limited in her ability to complete a normal work-day and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods, the Court finds that

the ALJ's determination that plaintiff would not be off task 20% of the time is not supported by

substantial evidence in the record); *Rowling v. Colvin*, No. 16-CV-6577, 2018 WL 1151106, at

*8 (the vocational expert testified that, if plaintiff were off task about 20% of the time due to

impaired concentration, no jobs would be available, and the record--which indicated primarily

"moderate" limitations in concentration--does not contain substantial evidence to support the

ALJ's conclusion that Plaintiff is not disabled); *Robert S. v. Comm'r of Soc. Sec.*, No. 3:18-CV-357 (ATB), 2019 WL 4463497, at *9-10 (N.D.N.Y. Sept. 18, 2019) (the uncontradicted medical opinion from multiple treating providers that plaintiff would be off task more than would be tolerated by employers (according to the VE), cannot be overcome by the ALJ's critique of the opinion evidence unless the contrary evidence is "overwhelmingly compelling") (*distinguishing Smith v. Berryhill*, 740 F. App'x 721, 723-26 (2d Cir. 2018))

This case is distinguishable from *Smith v. Berryhill*. In *Smith*, a panel of the Second Circuit affirmed the ALJ's decision to give limited weight to three treating physicians who found that Smith would be off task more than 20% of the workday and would be unable to meet competitive attendance standards. 740 F. App'x at 723-26 (2d Cir. 2018). The medical opinions in *Smith* that plaintiff would be off-task were primarily based on his physical limitations. *Id.* at 723-24, 725. In discounting these opinions, the *Smith* court noted, *inter alia*, that these opinions were not supported by clinical and diagnostic findings and were contradicted by the findings, conclusions, and opinions of another treating physician, as well as several consulting physicians. *Id.* at 723-25. In this case, as in *Avers*, *Rowling*, and *Bruner*, treating providers found that plaintiff was off-task primarily as a result of mental health limitations, for which potential confirming clinical and diagnostic findings are much more limited. Moreover, in this case, there was no medical opinion evidence contradicting the conclusions of the treating sources about Plaintiff's tendencies to be off-task.[5] This court finds

---

[5] The *Smith* court did provide some reasons for discounting the opinion of the treating sources that are similar to those used by the ALJ in this case--e.g., the lack of support in the treating providers' treatment notes, and the lack of specialization off one provider. *Id.* at 724-25. However, for the reasons stated above, this court finds *Smith*, a summary order with no precedential effect is, overall, distinguishable from this case.

that the ALJ's lay analysis in this case did not make an "overwhelmingly compelling" case for ignoring the opinions of the two treating providers and Dr. Moore.

At least one reason provided by the ALJ for discounting the opinions of Dr. Stuppel and LCSW Dearie is not supported by the record. Specifically, the ALJ stated that both treating providers offered opinions in the form of a check box type form with little or no narrative to support and "[s]uch forms are not as persuasive as in-depth written analysis which discusses the basis behind the opinion." (T. 19.) However, although the ALJ cited LCSW Dearie's various mental health assessments of Plaintiff, he did not acknowledge that she expressed consistent opinions about Plaintiff's mental health limitations, to some extent in narrative form, in different formats, on multiple occasions over a three-year period of treatment. (T. 19, 318, 323, 345-46, 349, 388-89.) Moreover, the other opinion on which the ALJ bases her RFC findings, that of Dr. Lieber-Diaz, contains very little "in-depth written analysis" and fails to address plaintiff's marked limitations, as found by Dr. Moore. (T. 19, 100.)

The ALJ was correct in observing that progress reports indicated that Plaintiff was experiencing less anxiety and improved depressed mood with good reaction to medication. (T. 19, 290-91, 294-95, 304, 315-16, 321, 370, 372-74, 381.) However, the limited medical record in this case also documents that Plaintiff's mental health symptoms persisted and required medication despite some normal mental status examinations and a lack of "frequent psychiatric hospitalizations or inpatient treatment." (T. 18-19.) For example, in December 2015, LCSW Dearie noted that an order of protection against Plaintiff's abusive ex-partner was discussed, but she was going outside more and going to stores with her mother. (T. 321.) Although she was coping fairly well, Plaintiff continued to struggle to go places out of fear of seeing her ex-

partner or their family members.  She had moved back in with her parents for safety reasons, and reported less anxiety since doing so.  (T. 321-22.)

The Court's review of the record does not support the ALJ's conclusion that Dr. Moore's finding of marked limitations in relating to others, making appropriate work decisions, and maintaining a regular schedule was not supported by the mental status examination findings or the overall evidence of record.  (T. 18, 331.)  For example, Plaintiff reported to Dr. Moore in January 2016 that she last worked four years prior to the consultative examination as a stocker for three days, but she was overcome by anxiety because of being around too many people.  (T. 328.)  She also reported often experiencing difficulty sleeping, feelings of depression and hopelessness, crying spells, irritability, loss of energy, diminished sense of pleasure, the lack of friends other than her mother, abuse as an adult, trust difficulties, intrusive thoughts, nightmares, a hyperstartle response, hypervigilance, excessive worries and restlessness, and panic attacks with palpitations, sweating, breathing difficulties, trembling, and chest pain.  (T. 329.)  Plaintiff reported that she had gone for a month and a half without leaving the house because of these panic attacks, and that she sometimes worried that someone might be watching her.  (*Id.*)  Dr. Moore determined that Plaintiff had fair-to-poor judgment with depression, anxiety and agoraphobia.  (T. 331.)

Plaintiff's January 2015 function report is consistent with her description of symptoms to Dr. Moore.  (T. 215-21.)  In that function report, Plaintiff stated that she had nightmares and got about two hours of sleep per night.  (T. 215.)  She went outside once per week and went to therapy, was too afraid to be alone, and did not drive, in part because she was too afraid of running into someone.  (T. 217-18.)  Plaintiff hated change and got so stressed out by changes in her schedule that she wanted to cry.  (T. 221.)  She had a hard time following any

instructions because she would be looking around to see if anyone was coming to get her or hurt her.  (*Id.*)

Plaintiff's testimony at the administrative hearing in March 2018 was also consistent with her presentation to Dr. Moore.  (T. 39-50, 329-31.)  For example, Plaintiff testified that she does not go in stores because there are too many people, which increases her anxiety.  (T. 45-46.)  She lives with her parents, and her mother buys groceries and cooks meals while Plaintiff loads the dishwasher, washes her clothes, and vacuums.  (T. 39-40, 47.)  Regarding her conditions, Plaintiff testified that she suffers from PTSD characterized by panic attacks, flashbacks and nightmares, as well as anxiety, audio hallucinations, high blood pressure, depression, and back problems.  (T. 41-44, 50.)  She stated that her mother reminds her to take medication, and that the only time she leaves the house is to see Dr. Stuppel or LCSW Dearie. (T. 42, 48.)

Plaintiff's function report, testimony, and report to Dr. Moore are considered subjective, but an examining psychologist is better equipped than a lay ALJ to evaluate the reported symptoms and to evaluate the extent of Plaintiff's limitations.  In any event, there are few mental health progress notes in the record, and, as discussed above, there are fewer "objective" ways to document mental health, as opposed to physical impairments.  Ultimately, the Court concludes that the ALJ erred in her reliance on Dr. Lieber-Diaz's non-examining opinion over those of the three examining sources, which tainted her conclusions regarding the nature and severity of Plaintiff's mental limitations.  Because of these errors, the Court cannot determine whether the ALJ's RFC findings, and her ultimate determination that Plaintiff was not disabled, were supported by substantial evidence.  The ALJ's errors are not harmless and a remand is required.  *See, e.g., Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016)

(because the court is not convinced that proper consideration of the physician's opinion would not change the outcome of the claim, it cannot find that ALJ's error harmless).

### B. The ALJ's Step Five Determination and the Nature of Remand

Because remand is necessary to address the errors identified above, the Court declines to reach a finding on Plaintiff's other arguments regarding the ALJ's Step Five determination and the vocational expert testimony.  (Dkt. No. 9, at 8-10, 18-19; Dkt. No. 16, at 3.)  However, upon remand, the ALJ should also conduct a new analysis as to whether there are other jobs that Plaintiff can perform, which exist in significant numbers in the national economy.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  This Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

On remand, the Commissioner should properly evaluate the medical opinion evidence and reevaluate Plaintiff's RFC and ability to perform competitive work.

**ACCORDINGLY**, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings, consistent with this Decision.

Dated: April 29, 2020

Andrew T. Baxter
U.S. Magistrate Judge